(Decided July 11th, 1865.)

---

WILLIAM F. DALRYMPLE *vs.* GEORGE M. LAUMAN, & others.

CONTRACT, CONSTRUCTION OF : CONDITION PRECEDENT.—G. M. L. sued W. F. D. upon the following agreement, which had been subscribed by the latter, with others : "We, whose names are hereunto written, in case a contract is made between the Northern Central Railway Company, and ——, —— and ——, for the completion of said road between Sunbury and Canton, do hereby severally agree to and with the said last named parties, the contractors, to purchase from them the bonds of said Company, which they may obtain under such contract, at the rate of seventy-five per cent. upon the par value thereof, and to the amount for which each hereby subscribes, and to pay for the same as follows: ten per cent. upon demand, and ten per cent. thereafter, in monthly payments, or, as we may respectively elect, the entire amount in cash; this subscription, however, is not to be binding until said bonds, to the amount in the aggregate at par of one million of dollars, shall be disposed of." The general issue was pleaded, with leave to give special matters in evidence, and all errors of pleading waived on both sides. It was admitted that the aggregate par value amount of the bonds disposed of, at the rate prescribed by the contract, did not exceed the sum of $643,000. The blanks in the agreement were filled with the names of G. M. L., and others, after it had been signed by W. F. D.;— HELD.

1st. That while the agreement shows that the parties subscribing, intended to aid the Rail Road Company in their undertaking, to complete their road, by purchasing the bonds referred to; it is equally clear from the condition upon which the subscription was to become binding, that they intended to protect themselves from injury and loss.

2nd. That the proviso contained in the contract, was inserted for the benefit of the subscribers for the bonds, and looking to the general purposes of the contract, and the peculiar circumstances under which the bonds were to be issued, it may be well inferred, that it was intended to prescribe the rate, as well as the amount of the sales to be made, before the subscription should be binding.

3rd. That the bonds subscribed for were a part of the million to be "disposed of," and the expression, *that it should not be binding until a million of the bonds should be taken,* might well be construed, at least so far as the rule prescribed by the contract is concerned, as one requiring the disposition thus commenced, to be continued, until the amount specified should be disposed of.

4th. That this construction seems to be required by purposes plainly inferable from the general scope and character of the contract, and being consistent with the particular language of the proviso, that construction must be adopted as the true one, and the contract allowed to have effect accordingly.

5th. That the condition upon which, according to this construction of the contract, the defendant's liability was made to depend, having never been performed, it follows, as a matter of course, that no judgment should have been rendered against him.

APPEAL from the Superior Court of Baltimore city :

This is an appeal from a judgment rendered in the Superior Court of Baltimore city, the 18th of October 1860, for $5,900 and costs, in a suit docketed by consent of parties to January term, 1858.

The original nar. was amended, and, as amended, contains two counts, and sets out as cause of action, a certain agreement between the parties to the effect recited in the nar. as follows : "We, whose names are hereunto written, in case a contract is made between the Northern Central Railway Company and George M. Lauman, Isaac Eckert and J. Hall Pleasants, for the completion of said road between Sunbury and Canton, do severally agree to and with the said last named parties, the contractors, to purchase from them the bonds of said Company, which they may obtain under, said contract, at the rate of seventy-five per cent. upon the par value thereof, and to the amount for which each hereby subscribes, and to pay for the same as follows : ten per cent. upon demand, and ten per cent. thereafter in monthly payments, or, as we may respectively elect the entire amount in cash; this subscription, however, is not to be binding until said bonds to the amount in the aggregate at par, of one million of dollars, shall be disposed of." The first count then avers, that the defend-

48      v.23.

ant subscribed said agreement for the sum of $25,000; that a contract was made between the plaintiffs and the Railway Company, for the completion of the road, and that bonds in the aggregate at par of $1,000,000 were disposed of; that a demand for the first instalment of his subscription had been made of the defendant, but he had not paid it, nor the several monthly instalments thereafter, as they became due, but refused so to do, or to exercise his privilege of paying the whole subscription in cash.

The first count looks to breaches of the contract up to the time of suit, treating the non-payment of each accruing instalment as a distinct breach. The second count, which sets out the substance of the agreement, alleges an utter refusal of the defendant to perform the agreement, averring readiness of the plaintiff to comply, and rests upon the theory that the refusal, as stated, affects the entire contract, giving the plaintiff a right, without delay, to proceed for breach of the contract as an entirety.

The general issue was pleaded, with leave to give special matters in evidence, and errors of pleading waived on both sides.

The bill of particulars demanded, claims the difference between the sum contracted to be given for $25,000 of bonds of the Northern Central Railroad, being seventy-five per cent., or $18,750, and the market value of said bonds, at the time of the breach of the contract, 20th October 1857, being fifty per cent., or $9,375, the said difference being for principal, $9,375, with interest thereon from date of breach, 20th October 1857.

*The first exception* sets out the several subscription papers, similar to the one signed by the defendant, and referred to in the nar., these being introduced by the plaintiff's proof, to show a disposition of $1,000,000 of bonds called for by the contract. Direct subscriptions for the bonds to the amount at par of $381,000 are shown, though, of that amount, the plaintiffs, at the trial, only proved the subscription and payment to the extent of $242,000. On the

paper is the defendant's name, as subscriber. It is an admitted fact in the case, that at the time of the signature of the defendant to the agreement sued on, the plaintiffs' names were not inserted as contractors with the Railroad Company, but there was a blank left, which blank was afterwards, and before suit, filled up by the plaintiffs with their names. Subscriptions upon similar papers were proved by commissions issued to New York, and York, Pa. In New York the subscriptions amounted to $93,000, omitting that of J. Hillyard Cameron, as to which the power was not produced. Under the York commission, $30,000 were shown. A subscription of $5,000 by Eli Lewis; by the Canton Company of $80,000; a sale in January 1857, by Patrick H. Sullivan, of $3,500, on account of Pleasants, one of the plaintiffs, at 70; a sale in September 1856, of $54,000 of the bonds, by Samuel Harris & Sons, for account of Pleasants, and sales by Wm. Fisher & Son, for the same account, which shows up to the end of March 1857, a disposition of $162,000 worth of bonds at an average of 69. The plaintiffs further proved subscriptions and payment by Dougherty, Herr, and others, to the extent of $81,500.

The plaintiffs further proved a contract by them, as contractors, with the "Montour Iron Company," dated 8th December 1855, for three thousand five hundred tons of rail, to be placed on the road, to cost $72.00 a ton, and to be paid for in the bonds referred to, at the rate of 75 per cent. of their par value. At the rate of $72.00 per ton, the moneyed consideration would have been $252,000, which, at 75 per cent., represented $336,000 of bonds.

They further proved agreements with sub-contractors on the road, to take the bonds in part payment of work, and that by the middle of January 1857, the sub-contractors had earned and had actually received, or were entitled to receive, said bonds to the amount in the aggregate of $111,500.

The disposition of bonds in these various ways, foots up,

according to the statement of the plaintiff below, $1,188,-500, viz:

| | | | | | |
|---|---|---|---|---|---|
| By the three subscription papers, | - | | | - | $242,000 |
| In New York, | - | - | - | - | 93,000 |
| In York, | - | - | - | - | 30,000 |
| Eli Lewis, | - | - | - | - | 5,000 |
| Canton Company, | - | - | - | - | 80,000 |
| Sales by Sullivan, | - | - | - | - | 3,500 |
| "  " Harris & Son, | - | - | - | - | 44,000 |
| "  " Fisher, to 1st April 1857, | - | | - | - | 162,000 |
| Herr, Dougherty, *et al.*, | - | | - | - | 81,500 |
| Montour Co., | - | - | - | - | 336,000 |
| Sub-contractors, | - | - | - | - | 111,500 |

$1,188,500

The plaintiff proved by *John S. Leib*, Treasurer of the Northern Central Railroad, that the whole amount of the bonds of the Company, issued under the contract of the 20th December 1855, and its supplements, was $996,500, and these were issued up to the end of the year 1856; that at the end of that year the plaintiffs were entitled to receive from the Company, for work done under that contract, in bonds, the further amount of $22,161, and the Company, in lieu of delivering bonds to that amount, paid the plaintiff their value in money, estimated at $\frac{75}{100}$, or $16,620.75, thus making the whole sum, in bonds, to the end of 1856, $1,018,661; and that on the 16th of January 1857, the Northern Central Railroad paid to the plaintiffs $80,000 in said bonds, for work done and to be done under the said contract, as per receipt.

The same witness proved that all subsequent payments to the plaintiffs, were on account of another contract, and, on *cross-examination*, proved that no other contract than that of the 20th of December 1855, was made for building the road from Sunbury to Canton; that the road had been worked upon by the Company through other contractors, and had to that time never been completed; the tunnel at

Canton not being commenced, though work was done by the plaintiffs on the line of the road running over the grounds of the Canton Company, to the value of $300,000 and upwards.

The plaintiffs then gave in evidence a contract between themselves, as contractors, and the Northern Central Railroad Company, dated the 20th of December 1855, for the construction of all the unfinished portions of the road between Tide-Water, at Canton, on the Patapsco river, and Sunbury, in Pennsylvania. The contract, with its specifications and supplements, is voluminous; by its terms the contractors are to receive, as consideration, $2,005,000, of which $1,000,000 are to be in bonds of the Company, to be issued to the contractors, or to their order, from time to time, as the work progressed, and in the manner specified. For the bridge across the Susquehanna, payable in money, $280,991. For the completion of the road from Millersburg to Sunbury, $521,509. And for the completion of the tunnel on the Canton division, $202,500; making, in the aggregate, the amount above stated. There is a clause of the contract by which the Company reserves the right to commute any portion or the whole of the cash payments into the bonds of the Company, of the particular issue proposed to be put out in pursuance of this contract. The contractors stipulate to complete the unfinished portions of the road between Tide-Water, at Canton, and the junction of the road with the Sunbury and Erie road, at Sunbury, Pa.; to complete the bridge then contracted for over the Susquehanna; to construct a road from a point near the Bolton Station, at Baltimore, by tunnel, or otherwise, to Tide-Water, at Canton; as also a branch from a point near the Belvidere bridge to the Calvert Station. The contractors are to satisfy all claims for damages to land or buildings injured or used in the construction of the road, though this applies only to the upper, or Pennsylvania end of the road; the Canton division is exempted. They stipulate to have the portion from Bridgeport to Sunbury, with the ex-

ception of the bridge, completed by the 1st of July 1856, which was extended to the 1st of September 1856. The Canton division, with the exception of the tunnel, was also to be completed by the 1st of July 1856. But the Company stipulate that the division between Millersburg and Sunbury, as also the tunnel on the Canton end, shall not be commenced or worked on until it might suit their convenience, and they should direct. In a supplemental agreement of the same date with the contract, the consideration is somewhat varied in amount, and stipulations are entered into to secure to the Company the application of moneys raised upon its bonds, placed in the contractors' hands, to the purposes of the contract.

The plaintiffs also gave in evidence the proceedings of the Board of Directors of the Canton Company, beginning with extracts from minutes of the 21st June 1855, setting out a resolution for a committee of six stockholders, three from Baltimore, and three from New York, to solicit subscriptions to the bonds of the Northern Central Railroad Company, the defendant being appointed one of the committee. There are also extracts from the proceedings of the Canton Company on the 4th of October 1855, and the 20th of November 1855, the defendant being present at both meetings.

A statement of facts is found in the record with reference to an interview between the counsel for the plaintiffs and one of the counsel of defendant, before suit brought, relied upon by the plaintiffs in the trial below, as a waiver of tender of bonds, on the demand upon the defendant of payment of his subscription; it being admitted that the letter of demand of Messrs. Brown & Brune, dated the 20th of October 1857, and given in evidence, was addressed to the defendant, who made no reply to it, but sent it to his counsel without instructions, but with a view to his appearing as counsel in case of a suit. That defendant's counsel, afterwards, meeting Mr. Brown, said to him: "Of course we will not pay, you can go on with the suit."

The defendant, to maintain the issue on his part, offered evidence to show that his subscription to the paper bearing his name, was made at a meeting of the Board of Directors of the Canton Company, held on the 21st of June 1855, and that at that meeting it was understood, and he was induced to sign by such understanding, that the firm of Edmund Miller & Co., then held to be a very wealthy house in New York, were to be, in part, the contractors for making the road from Sunbury to Canton. He further gave in evidence a printed form of contract, purporting to have been executed by Miller & Co. This contract embraces the names of Edmund H. Miller and William R. Travers, (composing the firm of Edmund Miller & Co., of N. Y.,) George M. Lauman, (one of the plaintiffs,) Philip Dougherty, and J. Hall Pleasants, (another of the plaintiffs,) and has for its object the construction of the road from Tide-Water to Sunbury, in substantially the same terms as the contract executed between the Railroad Company and these plaintiffs, before referred to. No proof was given as to the time this paper was prepared, and it was shown that negotiations previously pending between Miller & Co. and the Northern Central Railroad Company, were, on the 10th of November 1855, brought to a close by the refusal of Miller & Co. to execute the contract, and the notice of the Railroad Company that the negotiation was at an end.

The defendant then offered in evidence various proceedings of the Northern Central Railroad Company, viz: a letter of Messrs. Pleasants & Lauman, to the Company, dated the 16th of November 1855, referring to the defection of their late associates, and expressing their readiness to take the contract.

On the 26th of November, the Railroad Company agreed and bound themselves to contract with these plaintiffs for the completion of the road.

*Robert S. Hollins,* Secretary of the Northern Central Railroad, testified that at the date of the contract with the Montour Company, the Northern Central Company had pur-

chased such iron from that Company at $65.00 per ton, *cash.*

The defendant then offered a contract between the plaintiff and the Northern Central Railroad Company, dated the 18th of February 1857, by which the original contract of the 20th of December 1855, was annulled, and this of the 18th of February 1857, substituted in its stead, which differs materially from the original contract. And on the 1st of December 1857, as appears by the agreement of that date, the plaintiff abandoned the work upon the road.

Whereupon, the plaintiffs offered the following prayer :

*Plaintiffs' Prayer.* The plaintiffs pray the Court to instruct the jury, if they shall find from the evidence, that the defendant, in the summer of the year 1855, did sign the paper offered in evidence as the agreement between the plaintiffs and the defendant, and on which this action is brought, and that at the time of signing the same there was a blank therein left, to be thereafter filled up with the names of the persons with whom the Northern Central Railway Company should contract for the completion of their said road between Sunbury and Canton, and that the plaintiffs did afterwards enter into a contract with the said Company for the completion of their road between Sunbury and Canton, as is given in evidence in this action, and that the said plaintiffs, in entering into the said contract with the said Company, reasonably relied on the subscription of the defendant, and other subscriptions to the aforesaid agreement, ( if the jury shall find that other subscriptions were made to the said agreement, as is offered in evidence, as affording them facilities in disposing of the bonds of the said Company, to be raised by them under their aforesaid contract with the said Company, and that the plaintiffs did then fill up the said blank with their own names; and that one million of the bonds mentioned in the said agreement, were obtained by the said plaintiffs under their said contract with the said Company, and the supplemental contracts between the said plaintiffs and the Company, of the

20th December 1855, and 20th May 1856, if their sup-
plemental contracts are found by the jury, and were dis-
posed of by the said plaintiffs before they made a demand
on the defendant for a performance of his aforesaid agree-
ment with the plaintiffs, if they shall find that any such
demand was made,) and that after such disposition of the
said bonds, the plaintiffs made a demand on the defendant
for a performance of his aforesaid agreement with the
plaintiffs, as has been offered in evidence, and that the
counsel for the defendant, in answer to such demand, in-
formed the counsel for the plaintiffs, that the defendant
would not comply with the said demand, and that at the
time of making such demand, the said plaintiffs had pos-
session of bonds of the said Company, received by them un-
der their said contract with the said Company, to an
amount greater than $25,000, at the par value thereof, and
were ready and willing to perform their part of the said
agreement, in the event that the defendant had been ready
and willing on his part, to perform the said agreement,
then the jury may find their verdict for the plaintiffs, with
damages equivalent to the difference in value (if any,) be-
tween the value of $25,000 of the said bonds, estimated at
the sum or price of seventy-five per cent. of the par value
thereof, and the current market value of said bonds, at the
time of the refusal of the said defendant to perform his part
of the said agreement, unless the jury shall further find,
that the defendant signed the aforesaid agreement upon the
condition, that the aforesaid blank therein, was to be filled
with the names of Edmund H. Miller, and others, mention-
ed by the witnesses, and that the plaintiffs, at the time of
making their contract with the said Company, knew that
the signature of the defendant to the said agreement, was
attached to said agreement upon such condition.

The defendant thereupon offered the ten following
prayers :

*Defendant's* 1st *prayer.* That if the jury find that the
subscription contract offered in evidence by the plaintiffs,

was signed by the defendant, with no names inserted as designating the parties with whom the contract was to be made by defendant, and that the defendant signed said paper under the belief and inducement, that E. H. Miller & Co., were to be parties with whom he was to contract; and if the jury find, that E. H. Miller & Co., hereafter referred to, made such contract, and that the blank in said contract was afterwards filled by one of the plaintiffs with the names of the plaintiffs, as parties to such contract with the defendant, without the knowledge, or prior or subsequent consent of the defendant to treat the plaintiffs as contracting parties, then the plaintiffs cannot recover.

*Defendant's 2nd prayer.* If the jury shall find, that at the time the contract declared on, (if they shall find such contract,) was entered into, it was represented to the defendant, that the contract for the completion of the Northern Central Railroad, was to be made with Miller & Co., and he was influenced by such representation; and if they shall find, that the same was not made with Miller & Co., but was made with the plaintiffs, then the plaintiffs are not entitled to recov er, because there is no evidence of a contract having been made with Miller & Company

*Defendant's 3rd prayer.* That the subscription paper offered in evidence, contemplates the disposal of said bonds to the extent of a million of dollars, within reasonable time; and if the jury shall find, that the said paper was signed in June 1855, by the defendant, and that the bonds to the extent of a million, were not diposed of till the 1st of June 1856, then the said million of bonds were not disposed of in a reasonable time, and the plaintiffs are not entitled to recover.

*Defendant's 4th prayer.* If the jury shall believe the evidence offered by the plaintiffs, with respect to the subscription by the Montour Iron Company, for the bonds of the Northern Central Railroad Company; and if they shall believe that at the time of such subscription and delivery, the market value of such railroad iron as was agreed to be fur-

nished, if the jury shall find such facts, was not higher than sixty-five dollars per ton, then the plaintiffs cannot recover.

*Defendant's 5th prayer.* If the jury shall find, that the defendant entered into the contract declared on, and that the plaintiffs thereafter entered into the contract with the Northern Central Railroad Company, dated 20th December 1855, for the completion of the road from Sunbury to Canton, and that afterwards, before any refusal by defendant to take the bonds, the plaintiffs made with the Northern Central Railroad Company the contract of 18th February 1857, then the plaintiffs are not entitled to recover; the true construction of the contract declared on, requiring that the contract for the completion of the road therein referred to, should be a contract continuing till the road was so made, or till the parties to said contract for completion, were discharged therefrom, by some other cause than their own act.

*Defendant's 6th prayer.* That the plaintiffs are not entitled to recover, because there is no evidence that they tendered to the defendant, on condition of being paid for them, bonds of the Northern Central Railroad Company, according to the terms of the contract declared on, and there is no evidence of a waiver of such tender.

*Defendant's 7th prayer.* That the plaintiffs cannot recover, because there is no evidence of the making of such a contract between the plaintiffs and the Northern Central Railroad Company, as is contemplated and required by the terms of the subscription paper offered in evidence by the plaintiffs.

*Defendant's 8th prayer.* That the contract for the completion of the Northern Central Railroad, spoken of in the contract declared on, was according to the true construction of the contract declared on, to have been made in a reasonable time; and if the jury shall find, that the contract declared on, was made in June 1855, and that the contract for the completion of the road was not made till the 20th December 1855, then they must find for the defendant, the

said contract, for the completion of the road not having been made in a reasonable time.

*Defendant's 9th prayer.* If the jury find that the plaintiffs, and the Northern Central Railroad Company, executed the contract dated the 20th December 1855, and that at the execution thereof, the amount of one million of bonds of said Railroad Company had not been disposed of, then the plaintiffs cannot recover in this case, because they did not make said contract on the faith of any stipulation contained in the subscription paper offered in evidence, notwithstanding, the jury may find that the full amount of said million of bonds were disposed of subsequently to the execution of said contract.

*Defendant's 10th prayer.* That by the true construction of the contract declared on, the disposition to be made of the million of bonds contemplated by the said contract, was by a subscription to said bonds, upon the terms stated in said paper.

But the Court (MARTIN, J.) rejected all the said prayers, both of the plaintiffs and the defendant, and instructed the jury as follows:

"The plaintiffs pray the Court to instruct the jury, that if they shall find, from the evidence, that the defendant, in June of the year 1855, did sign the paper offered in evidence as the agreement between the plaintiffs and the defendant, and on which this action is brought, and that at the time of signing the same, there was a blank therein left, to be thereafter filled up with the names of the persons with whom the Northern Central Railway Company should contract for the completion of the road between Sunbury and Canton; and that the plaintiffs did afterwards, and within a reasonable time, enter into a contract with the said Company for the completion of their road between Sunbury and Canton, as is given in evidence in this action; and that the plaintiffs, in entering into the said contract with the said Company, reasonably relied on the subscription of the defendant and other subscriptions to the afore-

said agreement, (if the jury shall find that other subscriptions were made to the said agreement, as is offered in evidence,) as affording them facilities in disposing of the bonds of the said Company, to be received by them under their aforesaid contract with the said Company, and that the plaintiffs did then fill up the said blank with their own names, and that there was a subsequent consent on the part of the defendant to the contract, as thus made between the plaintiffs and the said Company, and the supplemental contracts between the said plaintiffs and the Company, of the 20th of December 1855, and the 20th of January 1856, if those supplemental contracts are found by the jury, and were disposed of by the said plaintiffs in a reasonable time, and before they made a demand on the defendant for a performance of his aforesaid agreement with the plaintiffs, (if they shall find that any such demand was made,) and that after such disposition of the said bonds, the plaintiffs made a demand on the defendant for a performance of his aforesaid agreement with the plaintiffs, as has been offered in evidence, and that the counsel for the defendant, in answer to such demand, informed the counsel for the plaintiffs that the defendant would not comply with the said demand; and that at the time of making such demand, the said plaintiffs had possession of bonds of the said Company, received by them under their said contract with the said Company, to an amount greater than $25,000, at the par value thereof, and were ready and willing to perform their part of the said agreement, in the event that the defendant had been ready and willing on his part to perform the said agreement, then the jury may find their verdict for the plaintiffs, with damages equivalent to the difference in value (if any) between the value of $25,000 of the said bonds, estimated at the sum or price of seventy-five per cent. of the par value thereof, and the current market value of said bonds at the time of the refusal of the said defendant to perform his part of the said agreement.

"This prayer is granted as explained by the defendant's first prayer, also granted with modifications, as follows:

"That if the jury find that the subscription contract offered in evidence by the plaintiffs was signed by the defendant, with no names inserted as designating the parties with whom the contract was to be made by defendant, and that the defendant signed said paper, not intending that the Central Railroad Company should fill the blank with said contractors as they might select, but on the condition and with the intention that E. H. Miller & Co. were to be parties with whom he was to contract; and if the jury find that E. H. Miller & Co. thereafter refused to make such contract, and that the blank in said contract was afterwards filled by one of the plaintiffs with the names of the plaintiffs as parties to such contract with the defendant, without the knowledge, or prior or subsequent consent of the defendant to treat the plaintiffs as contracting parties, then the plaintiffs cannot recover.

"And I instruct the jury, that if they shall believe the evidence offered by the plaintiffs with respect to the subscription of the Montour Iron Company for the bonds of the Northern Central Railroad Company, and if they shall find that at the time of such subscription the value of said iron, as was agreed to be furnished, (if the jury shall find such facts,) was not worth more than $65.00 per ton, then to that extent the disposition of the bonds to the said Company is to be curtailed, and that the plaintiffs are not entitled to recover, unless the jury shall find that this deficiency in the amount of the bonds disposed of to the Montour Iron Company, (if the jury shall find such deficiency,) was supplied by the disposition of bonds to sub-contractors, at fair prices for their work and labor, or by the disposition of the said bonds in the market by the agency of brokers, (if the jury shall find such disposal,) so as to make, in the aggregate, a disposition of bonds by the plaintiffs to the extent of $1,000,000; and if the jury shall find that there was a disposal of the bonds, by brokers, for a sum or sums less than 75 per centum, then, in finding the amount of bonds disposed of in this manner, the jury are to make a ratable

curtailment, on the principle above stated, as applicable to the iron furnished by the Montour Iron Company.

"And further, I am of opinion, on the authority of the case of *Hochester vs. Latour*, 20 *Eng. L. & E. Rep.*, 157, that if the jury find for the plaintiffs, upon the evidence and preceding instructions, the plaintiffs will be entitled to entire damages for the breach of the contract declared on; that is to say, for the difference between the value of $25,000 of bonds of the Northern Central Railway Company, estimated at 75 cents in the dollar thereof, and the actual value of the same amount of bonds in the market at the time of the said breach, (if any such difference is found by the jury,) and that their recovery is not to be limited to damages for the non-payment of the two instalments of purchase money which had, by the terms of said contract, (if said contract is found by the jury,) become payable before the commencement of this suit; and I so instruct the jury."

To the refusal to grant the defendant's prayers, and to the granting of the instructions given by the Court, the defendant excepted, and the verdict of the jury and judgment of the Court being against him, appealed.

The cause was argued before Bowie, C. J., and Bartol, Goldsborough, Cochran and Weisel, J.

*Robert J. Brent* and *Geo. W. Dobbin*, for the appellant, argued:

1st. That the supposed agreement on which this suit is founded, is nothing but a proposition, or the basis for a proposed agreement, which the defendant below and his co-subscribers were willing to enter into with the proposed contractors, Miller & Co., or, according to the theory of the suit, with whoever might be the contractors at any future time. We maintain that this paper has no attributes of a contract, and is binding on no one as a contract on its face. *Douglass vs. Wilkeson*, 6 *Wend.*, 644. *Champion, et al., vs. Plummer*, 4 *B. & P.*, 254. Even if the plaintiffs be-

low had been named in this paper, it would not make a contract. *Trustees of Hamilton College vs. Stewart,* 1 *Comstock,* 581. *Same case,* 2 *Denio,* 403. But the representation that Miller & Co. were to be the contractors, makes part of the contract. *Swatara R. R. Co. vs. Brune,* 6 *Gill,* 49.

Certainly without some evidence of a subsequent agreement between the plaintiffs and defendant, looking to this paper for the terms of that subsequent agreement, no one could found upon that paper of the 21st June 1855, signed only *ex parte,* an obligation binding the appellees (who obtained the contract in December 1855) to furnish the million of bonds to the subscribers, upon their tendering the amounts respectively subscribed for. In maintaining this proposition, we shall insist that there is not a particle of evidence tending to show any agreement between the appellants and the appellee at any time. It is true, that the appellees, some six months after the execution of this paper, obtained a contract from the Northern Central Road, and they may or may not, in their own minds, have looked to a compliance with the proposals thus made by the subscribers to this paper; but an agreement cannot be thus constituted without the evidence of some distinct act on the part of the appellees, notifying the appellant and the other subscribers that the terms set forth in said paper were accepted, and would be mutually binding on the appellants and said subscribers.

If the case stands like a general offer to guarantee payment to any one who may furnish goods to a particular person, it has been held that notice must be given in a reasonable time that the goods have been furnished on the faith of the guarantee thus offered. *McIver vs. Richardson,* 1 *M. & S.,* 557. *Symmons vs. Waunt,* 2 *Stark. Ca.,* 371. *Gaunt vs. Hill,* 1 *Stark. Ca.,* 10. *Lanusse vs. Barker,* 2 *Wheat.,* 148. *Cremer vs. Higginson,* 1 *Mason,* 324. *Chase vs. Day,* 17 *Johns.,* 114. *Innman, et al., vs. Jackson,* 4 *Greenleaf,* 251. *Norton, et al., vs. Eastman,* 4 *Id.,* 526. *Seaver vs.*

Dalrymple *vs.* Lauman, *et al.*

*Bradley*, 6 *Id.*, 64. *Tuckerman, et al., vs. French,* 7 *Id.*, 115. *Babcock vs. Bryant*, 12 *Pick.*, 133. *Bordenave vs. Gregory*, 5 *East.*, 107. *Edgerton vs. Aspinwall*, 3 *Conn.*, 438. *Sargent vs. Parsons*, 12 *Mass.*, 154. *Douglass, et al., Reynolds, et al.,* 7 *Peters,* 113. *Russell vs. Clarke's Exrs.*, 7 *Cranch*, 69. *Drummond vs. Prestman*, 12 *Wheat.*, 515. *Grice vs. Recks*, 3 *Dev.*, 62. *Lee vs. Dick*, 10 *Peters*, 494. *Adams vs. Jones*, 12 *Id.*, 213. *Louisville Man. Co. vs. Welch*, 10 *How.*, 472. 1 *Parsons on Cont.*, 399. 1 *Id.*, 402, *note.*

We will contend that not only was no notice given to the appellant, that his offer was accepted by the appellees, and that they would be bound by its requirements, but a notice, if given after they became contractors with the Northern Central Railway, would have been too late, as the offer of the appellant must be accepted in a reasonable time, and the lapse of six months before the notice, would have been unreasonable; but, in fact, no notice was given by the appellees that they looked to the responsibility of the appellant on his offer of the 21st of June 1855, until the 20th of October 1857, more than two years after the date of the offer made by the appellant. Could·anything be more unreasonable than this delay? It results, that for more than two years from the date of our offer, the appellees were free and untrammelled by any obligation to give us the bonds, and only sought to make themselves parties to this alleged agreement, when the developments of more than two years' delay had made it their interest to hold us responsible.

That mutuality is necessary in all contracts, see the following cases, viz: 3 *Lead. Cases in Eq.*, 85, *top.* *Bodine vs. Glading*, 21 *Penn. Rep.*, 50. *German vs. Machin*, 8 *Paige*, 288. *Luther vs. Borden*, 7 *How.*, 14. *N. J. Steam Nav. Co. vs. Merchants Bk.*, 6 *Id.*, 383. *Batten on Conts.*, (67 *Law Lib.*,) 10. *Brashier vs. Gratz*, 6 *Wheat.*, 539, 541. *Parkhurst vs. Van Courtland*, 1 *Johns. Ch. Rep.*, 281. *Benedict vs. Lynch*, 1 *Id.*, 373. *McMurtrie vs. Ben-*

nette, 1 *Harring.* (*Mich.*) *Ch. Rep.*, 126.   *Hawley vs. Shel-don, et al.*, 1 *Id.*, 420.   *Cabeen vs. Gordon, et al.*, 1 *Hill's Ch. Rep.*, 56.

2nd. That by the true construction of the agreement sued on, said agreement was not to be obligatory on any sub-scriber thereto, till $1,000,000 of bonds were agreed to be taken, at 75 per cent., payable in money, or in labor or materials, at their cash value, they producing to the con-tractor $750,000 for the one million of bonds; and that the condition of said agreement is not complied with by the realization of said sum of $750,000 from a larger amount of bonds than a million, or by the sale of a million of bonds for labor or materials not worth, in cash, $750,000. There is therefore no evidence of such a subscription, under the terms of this paper, as will furnish a sufficient considera-tion.  *Gittings vs. Mayhew*, 6 *Md. Rep.*, 131.

Their own circular shows that they did not obtain their contract on the faith of this subscription paper, as more than half the million of bonds was taken by their sub-con-tractors—that is, after they had got their original contract.

3rd. That the contract made by the Northern Central Railway Company, with the plaintiffs below, was not such a contract as was contemplated by the agreement sued upon. Because the contract relied on as a compliance with the con-dition precedent to our liability, is not a *bona fide* contract to complete the road from Sunbury to Canton, in this, to wit:   1. It does not bind the contractors to begin work on the division of the road between Sunbury and Millersbury, until the 1st of January 1858.   2. The tunnel leading to the Canton section, is to remain unfinished as long as the Company thinks proper to let it alone, and the whole con-tract is therefore illusory, with this fatal gap between Can-ton and Sunbury not even contracted for.

4th. That the contract for the completion of the road from Canton to Sunbury, should not only have been made within a reasonable time, and the million of bonds disposed of, by agreements to purchase them in the manner contemplated

by the paper sued on, within a reasonable time, but the bonds should have been obtained by the appellants, ready for delivery to the purchasers, and there is no allegation or proof that they were, in fact, ever obtained, and a tender made. 2 *Parsons on Cont.*, 161. 2 *Kent*, 505.

5th. That the plaintiffs below acquired no right of action by the mere making of a contract, as a single act of condition precedent, by the performance of which their right of action became complete; but the contract must have been a continuing contract, to be worked out to the completion of the road, unless prevented by some cause other than the contractor's own act; and the plaintiffs below having voluntarily first materially modified and then abandoned the work before suit brought, thereby lost their right of action, if they ever had such right, against the appellant—such abandonment amounting to a failure of consideration, and if we had paid our money, we could now recover it back;—the failure was double, viz: the release to the Railroad Company of the million of bonds, and in the abandonment of their contract. See *Story on Bills*, sec. 684. *School Trustees of Trenton vs. Bennett*, 3 *Dutcher Rep.*, 517.

6th. That if any right of action accrued to the plaintiffs below, it was only to recover the ten per cent. payable on demand, which demand was made on the 20th of October 1857, and the two monthly instalments payable thereafter, before suit was brought; and they could only recover the difference between the value of the then three instalments of bonds at 75 per cent., and their market value at the respective dates at which they should have been taken.

*Thos. S. Alexander* and *Geo. Wm. Brown*, for the appellees, argued:

1st. That the signature of the defendant, and others, to the subscription papers, and permitting them to be circulated with a blank for the names of contractors, authorized any "*bona fide*," responsible parties thereafter to contract with the Railroad Company, on the faith of the subscrip-

tions; and the law will not permit the blank endorser or subscriber to set up any private intention, or secret understanding, to defeat the claims of such contractors.

But if such be not true in the abstract, yet assuming the defendant originally intended that Miller & Co., should be co-contractors, any subsequent change in those parties, which by prior or subsequent assent, was ratified by the defendant, would be binding upon him. This the defendant concedes in his first prayer, and the Court instruct the jury, that if they find such to have been the original condition accompanying the defendant's subscription, the plaintiffs cannot recover, unless they find a subsequent assent by the defendant to the plaintiffs becoming contractors; and the jury finding for the plaintiffs we must assume, either that they did not find such original intent on the part of defendant, or that the circumstances of the case, and the subsequent action of the defendant, convinced them of his assent to the naming of other contractors.

This embraces the plaintiff's prayer, and a portion of the Court's instruction; in connection with which, may be discussed the defendant's 5th and 7th prayers, which turn upon the contract. 1 *Parson's on Conts.*, 205. *Violett vs. Patton*, 5 *Cranch*, 142. *Androscoggin Bank vs. Kimball*, 10 *Cush. (Mass.) Rep.*, 373. *Montague vs. Perkins*, 22 *Eng. L. & E. Rep.*, 516. *Chesley vs. Taylor*, 3 *Gill*, 251. *Bank of Buffalo, vs. Kortright*, 22 *Wend.*, 348. *Baldwin vs. Ely*, 9 *How. (S. C.,)* 580. *Gist vs. Drakely*, 2 *Gill*, 330. *Gittings vs. Mayhew*, 6 *Md. Rep.*, 113.

2nd. The Court rightly ruled in putting it to the jury to find a contract made by the plaintiffs with the Railroad Company, within a reasonable time after the subscription of the defendant. What would be a reasonable time in a case like the present, depending upon the character of the object to be attained, and the usual mode of effecting similar enterprises, cannot be ascertained as an abstract legal proposition, to be propounded by the Court. It is essentially a question of fact to be submittted to a jury; and in

the case at bar, the jury found the contract was made in a reasonable time. This, in connection with the Court's instruction, covers the 8th of the defendant's prayers. The same principle extends to the defendant's 3rd and 9th prayers, relative to the disposition of the bonds. *Lawrence vs. McCalmot,* 2 *How.,* 426. *Louisville Man. Co., vs. Welch,* 10 *How.,* 461. *Coates vs. Sangston,* 5 *Md. Rep.,* 121. *Temple vs. Pullen,* 20 *Eng. L. & E. Rep.,* 306, (*& note.*) *Edwards vs. Balto. Fire Ins. Co.,* 3 *Gill,* 176. *Howe vs. Huntington,* 15 *Me. Rep.,* 350. *Hill vs. Hobart,* 16 *Me. Rep.,* 164. *Tindal vs. Brown,* 1 *T. R.,* 168.

3rd. The Court did not err in the principle it applied to the disposition of the million of bonds, in treating of the sale to "The Montour Iron Company." If the million were fairly disposed of, and not at grossly inadequate or nominal rates, which would of itself imply unfairness; but applied, as in the case of "The Montour Iron Company," to the purchase of rails, to be placed upon the road, or to sub-contractors, at a fair valuation for services upon the road, or in the stock market, at the current market rates; then if sufficient bonds were thus disposed of to make in the aggregate one million, estimated at 75 per cent., the stipulation of the agreement on the part of the plaintiffs was complied with, and the subscribers were bound.

The item of difference between cash rates for iron, and the rate at which the plaintiffs agreed to buy of "The Montour Company," can have no material effect, when we consider the difference between a cash and credit consideration in all such negotiations, and the circumstance of the payment being in certificates of an enterprise depending upon so many contingencies.

This includes the Court's instruction and the defendant's 4th and 10th prayers. *Whitcomb vs. Hungerford,* 42 *Barb.,* 177.

4th. It is not a case calling for actual tender at the time of demand; and further, if it were, and the facts set out in the plaintiffs' prayer, and the Court's instruction in

relation to this, were found for the plaintiffs, the specific tender of bonds became unnecessary, those facts amounting in law, to a waiver of tender. (*Defendant's 6th Prayer.*) *Balto. & Ohio R. R. Co. vs. Resley*, 7 *Md..Rep.*, 297, 314. 2 *Parsons on Cont.*, 161, 163. *Barr vs. Meyers*, 3 *Watts & Serg.*, 295. 2 *Kent's Com.*, 505, 508. 2 *Greenlf's Ev.*, sec. 609. *Edwards vs. Fire Ins. Co.*, 3 *Gill*, 176. *Ex-parte Danks*, 19 *Eng. L. & E. Rep.*, 486. *Polglass vs. Oliver*, 2 *Crompt.. & Jerv.*, (*Excheq.*,) 15. *Stone vs. Sprague*, 20 *Barb.*, 514. *Woods vs. Bridges*, 16 *Md. Rep.*, 258.

5th. Upon the absolute refusal to pay upon the demand made, the plaintiffs had a right to treat the entire contract as repudiated by the defendant, and to sue for an entire breach; upon which, if successful, the rule of damages is properly laid down in the Court's instruction. *Hockstetter vs. Latour*, 20 *Eng. L. & E. Rep.*, 157. *Cort, et al., vs. Railway Co.*, 6 *Id.* *Masterton vs. Mayor, &c., of Brooklyn*, 7 *Hill*, 61.

COCHRAN, J., delivered the opinion of this Court:

This suit was brought to recover damages from the appellant for not performing the following contract, to purchase certain bonds of the Northern Central Railway Company.

" We, whose names are hereunto written, in case a contract is made between the Northern Central Railway Company and Geo. M. Lauman, Isaac Eckert and J. Hall Pleasants, for the completion of said road between Sunbury and Canton, do severally agree to and with said last named parties, the contractors, to purchase from them the bonds of said Company, which they may obtain under said contract, at the rate of seventy-five per cent. upon the par value thereof, and to the amount for which each hereby subscribes, and to pay the same as follows : ten per cent. upon demand, and ten per cent. thereafter in monthly payments, or, as we may respectively elect the entire amount in cash; this subscription, however, is not to be binding until said

bonds to the amount in the aggregate at par of one million of dollars shall be disposed of.''

The case was brought to this Court on exceptions taken to the rejection of a series of prayers offered by the appellant, and to an instruction given by the Court in lieu of those prayers, and of a rejected prayer offered by the appellee. These exceptions present questions which go to the consummation of this agreement, to its construction, and to the appellees' right to a performance of it upon the proof offered at the trial. It is not essential, however, that our views should be expressed on all of these points, as we have satisfied ourselves that a final determination of the case may be reached by ascertaining the conditions to which the true construction of this undertaking subjected the appellees; and we may therefore assume, for all present purposes, without, however, so deciding, that the contract was so far consummated and mutual, as to be effective and binding on both sides.

A written contract, according to general rules, should be so construed as to effect the intention of the parties, as it appears from the terms and subject matter of the contract; and where a particular phrase or clause is such, that its meaning may be restricted or enlarged, it should receive the interpretation most consistent with the real purpose of the agreement; so, also, the construction of a condition in a contract will be most favorable to the party entitled to the benefit of it. These rules are too well settled and familiar, to be the subject of discussion, and with this brief reference to them, we proceed to examine the contract presented here.

The completion of the Northern Central Railway from Sunbury to Canton, and a sale of such bonds as the Company should issue for that purpose, were the immediate subjects contemplated by the contracting parties; and this paper, on its face, is an agreement with the appellees, if they should contract to complete the road, to purchase the bonds they should receive on that account, to the amounts

respectively subscribed for, at the rate of seventy-five per cent. upon their par value. The parties to this undertaking, would have been bound for the respective amounts of the bonds severally designated by them, but for a subsequent condition, upon the construction of which the difficulty here arises, providing that the subscription should not be binding until the par value amount of the bonds disposed of, should reach an aggregate of one million of dollars.

The appellant insists that this condition has never been performed, and, consequently, that he never became bound to take the bonds he had thus conditionally subscribed for. The interpretation of this proviso is not altogether free from difficulty, although we think the rights and interests which it was obviously intended to protect and subserve, when fairly considered, show, with some degree of certainty, its true import and purpose. That the completion of the road was to operate, in some sense, as a consideration for the agreement, cannot be disputed. Increasing the facilities of the road, would naturally tend to increase its revenue, and the effect of an increased revenue, in the way of enhancing the value of the bonds, could have been relied on as a consideration for the agreement to purchase them. But, looking to the present as well as the prospective value of these securities, it will be seen that the parties subscribing for them had an immediate interest in establishing a standard rate at which they should be sold. The intrinsic value of the bonds had not been ascertained, and, from the nature of the case, could not be, otherwise than by some general understanding with the appellees as to the terms upon which they should part with them; and, bearing in mind the circumstances of the appellees, through whose hands the bonds not subscribed for would necessarily find a market, it was all the more reasonable that the parties to this agreement should have contemplated an aggregate of sales, at the price they were to pay, sufficiently large to establish that price as the standard of their value. The duration of the enterprise on which the appellees proposed to enter, the large

amount of means they would require to prosecute it, and the uncertain value of the securities from which their means were to be realized, were all matters within the range of prudent consideration; and a state of circumstances might well have been anticipated, that would compel them to part with the bonds remaining in their hands upon terms that would depreciate the value of those obtained under this contract.

While the agreement shows that the parties intended to aid the appellees in their undertaking to complete the road, by purchasing these bonds, it is equally clear, from the condition upon which the subscription was to become binding, that they intended to protect themselves from injury and loss. Had it been their sole purpose to assist the appellees, without regard to contingencies likely to operate adversely to their interests as purchasers of the bonds, that could have been effected without the proviso found in the contract. This clause was inserted for the benefit of the subscribers for the bonds, and looking to the general purposes of the contract, and the peculiar circumstances under which the bonds were to be issued, we infer that it was intended to prescribe the rate as well as the amount of the sales to be made, before the subscription should be binding. The proviso itself, construing it favorably for the subscribers, according to the general rule governing the interpretation of such clauses, tends very strongly to support this view. The bonds subscribed for, were a part of the million to "be disposed of;" in fact, the disposition called for by the proviso, was initiated by this contract, and the expression, that it should not be binding until a million of the bonds should be taken, might well be construed, at least so far as the rate prescribed by the contract is concerned, as one requiring the disposition thus commenced to be continued until the amount specified should be disposed of.

This construction seems to be required by purposes plainly inferable from the general scope and character of the contract, and being consistent with the particular language of

the proviso, that construction must be adopted as the true one, and the contract allowed to have effect accordingly. This conclusion necessarily decides the case. The proof, contained in the bill of exceptions, shows, as the appellees admit in their brief, that the aggregate par value amount of the bonds disposed of, at the rate prescribed by the contract, did not exceed the sum of $643,000, and, as the condition upon which, according to our construction, the appellant's liability was made to depend, has never been performed, it follows, as a matter of course, that no judgment should have been rendered against him. The Court below, in its instructions to the jury, gave a different, and, as we think, erroneous construction to the contract, and the judgment will therefore be reversed.

*Judgment reversed.*

( *Decided July 12th, 1865.* )